UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

THEODORE J. LEVY and HELAINE A. LEVY,

*Plaintiffs*,

v.

JAGUAR LAND ROVER NORTH AMERICA, LLC., JAGUAR LAND ROVER LTD., and TATA MOTORS LTD.,

*Defendants*.

Civil Action No. 19-13497

**OPINION**

**John Michael Vazquez, U.S.D.J.**

Plaintiffs Theodore J. Levy and Helaine A. Levy bring this action against Defendants Jaguar Land Rover North America ("JLRNA"), Jaguar Land Rover Ltd. ("JLRL"), and Tata Motors Ltd. ("Tata") arising out of Mr. Levy's Jaguar vehicle door closing on and partially severing his right thumb. D.E. 1 ("Compl."). Currently pending before the Court are a motion to strike Plaintiffs' Complaint filed by JLRNA, D.E. 3; two motions to dismiss Plaintiffs' Complaint filed by JLRL and Tata pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, D.E. 4, 8; and a cross-motion filed by Plaintiffs for sanctions, counsel fees, costs, and disbursements against Tata, D.E. 9. The Court reviewed the parties' submissions in support and in opposition[1] and decided the motions without oral argument pursuant to Fed. R. Civ. P. 78(b)

---

[1] JLRNA's brief in support of its motion to strike will be referred to as "JLRNA Br.," D.E. 3-2, Plaintiffs' opposition to JLRNA's motion will be referred to as "Pl. Opp. to JLRNA," D.E. 6; JLRL's brief in support of its motion to dismiss will be referred to as "JLRL Br.," D.E. 4, Plaintiffs' opposition to JLRL's motion will be referred to as "Pl. Opp. to JLRL," D.E. 7; Tata's brief in support of its motion to dismiss will be referred to as "Tata Br.," D.E. 8-2, Plaintiffs' opposition to Tata's motion will be referred to as "Pl. Opp. to Tata," D.E. 9-2, Tata's reply will be referred to

and L. Civ. R. 78.1(b). For the reasons set forth below, JLRNA's motion to strike, D.E. 3, is **DENIED**; JLRL and Tata's motions to dismiss for lack of personal jurisdiction, D.E. 4, 8, are **GRANTED**; and Plaintiffs' cross-motion for sanctions, counsel fees, costs, and disbursements against Tata, D.E. 9, is **DENIED**.

Before turning to its analysis, the Court notes that it is dismayed with Plaintiffs' opposition briefs and their cross-motion for sanctions, counsel fees, costs, and disbursements. Plaintiffs' cross-motion and opposition papers cast unwarranted dispersions on counsel for Defendants, accusing counsel of bad faith, harassment, and frivolous filings. Pl. Br. at 4. In filing the cross-motion, it is Plaintiffs, not Defendants, who have acted improperly.

## I. BACKGROUND

### a. Factual Background[2]

Plaintiff Mr. Levy was severely injured when the soft-close automatic door of his 2016 Jaguar XJRL automobile closed on his right thumb and severed the upper portion of his thumb. Compl. at 1. Plaintiffs, a married couple, are both residents of Florida. *Id.* ¶¶ 41-44. Defendant JLRNA is a Delaware corporation with its principal place of business and corporate headquarters in Mahwah, New Jersey. *Id.* ¶¶ 46, 49. Plaintiffs allege that JLRNA "distributes, markets, sells, and services Jaguar and Land Rover-branded vehicles, and related parts and accessories throughout the United States. *Id.* ¶ 57. Plaintiffs state that JLRNA's New Jersey headquarters "supports

---

as "Tata Reply," D.E. 13-3; Plaintiffs' brief in support of its cross-motion will be referred to as "Pl. Br.," D.E. 9-2, Tata's opposition to Plaintiffs' cross-motion will be referred to as "Tata Opp.," D.E. 13-3, Plaintiffs' reply will be referred to as "Pl. Reply," D.E. 14.

[2] The factual background is taken from the Complaint, D.E. 1. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

retailers throughout North America, including, [u]pon information and belief, retailers in Florida where Plaintiff [Mr. Levy] purchased his vehicle." *Id.* ¶ 59.

JLRNA is a wholly owned subsidiary of Defendant JLRL. *Id.* ¶ 50. JLRL is a British corporation with its principal place of business in the United Kingdom. *Id.* ¶ 52. Plaintiffs allege that JLRL "is responsible for the design, development, manufacture, assembly, distribution, and sale of Jaguar vehicles, including Plaintiff's vehicle[.]" *Id.* ¶ 51. JLRL is a wholly owned subsidiary of Defendant Tata. *Id.* ¶ 54. Tata is a multinational automotive manufacturing company "registered and domiciled in India" with its principal place of business in India. *Id.* ¶¶ 54-55. Plaintiffs claim that "each of the Defendants is an agent, principal, or alter ago of one or more of the other Defendants, and acted with the other Defendants' knowledge, consent, and approval." *Id.* ¶ 68.

Mr. Levy purchased the 2016 Jaguar XJRL car from a Jaguar dealership in Florida on April 21, 2017. *Id.* ¶ 83. The car featured soft-close automatic doors ("SCAD"). *Id.* ¶ 84. On August 7, 2018, Mr. Levy drove Mrs. Levy and their friend to a restaurant in Juno Beach, Florida. *Id.* ¶¶ 85-87. Plaintiffs claim that after parking at the restaurant, "as [Mr. Levy] exited the driver's side door of the [car], the SCAD door automatic closing mechanism automatically triggered the door to close on [Mr. Levy's] right thumb." *Id.* ¶ 88. Mr. Levy pulled the door handle forcefully, but the door would not open. *Id.* ¶ 89. Plaintiffs state that "the soft close automatic mechanism and motor pulled the driver's door firmly, and not 'so softly' pulverized the bone structure, and crushed the flesh, nerves, blood vessels, tendons, and musculature of the distal portion of [Mr. Levy's] right thumb." *Id.* ¶ 90. The "upper portion of [Mr. Levy's] formerly fully functional right thumb" was severed. *Id.* ¶ 91. Mr. Levy underwent emergency surgery in Florida. *Id.* ¶¶ 93-94. Since the accident, Plaintiffs allege Mr. Levy has been in daily pain, has difficulty performing basic

3

tasks, and has become depressed. *Id.* ¶¶ 96-99, 106. Further, Mr. Levy had been the primary caregiver for his ill wife, Mrs. Levy, but can no longer physically care for her, so he expects to have to hire an assistant to care for her. *Id.* ¶¶ 100, 103.

### b. Procedural History

Plaintiffs filed their Complaint on June 6, 2019. *Id.* Plaintiffs allege twelve claims for relief: (1) strict products liability – failure to warn, (2) strict products liability – manufacturing defect, (3) strict products liability – design defect, (4) negligence, (5) negligent misrepresentation, (6) fraudulent concealment, (7) breach of implied warranty, (8) breach of express warranty, (9) breach of warranty under the Magnuson-Moss Warranty Act as set forth in 15 U.S.C. Chapter 50, (10) breach of implied warranty of merchantability, (11) negligent infliction of emotional distress, and (12) loss of consortium. *Id.* ¶¶ 109-252.

On July 18, 2019, JLRNA filed a motion to strike Plaintiffs' Complaint, D.E. 3, which Plaintiffs opposed, D.E. 6. On August 1, 2019, JLRL filed a motion to dismiss for lack of jurisdiction, D.E. 4, which Plaintiffs opposed, D.E. 7. On August 28, 2019, Tata filed a motion to dismiss for lack of jurisdiction. D.E. 8. Plaintiffs opposed the motion, D.E. 9, and Tata replied, D.E. 13. Plaintiffs filed their cross-motion against Tata for sanctions, counsel fees, costs, and disbursements on September 23, 2019. D.E. 9. Tata filed opposition, D.E. 13, to which Plaintiffs replied, D.E. 14.

## II. MOTION TO STRIKE

### a. Legal Standard

Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed R. Civ. P. 12(f). "This standard essentially translates into application of the standards of a Rule 12(b)(6)

motion to dismiss, with the understanding that a motion to strike should be granted sparingly." *Eisai Co., Ltd. V. Teva Pharmaceuticals USA, Inc.*, 629 F. Supp. 2d 416, 424 (D.N.J. June 26, 2009). "[M]otions to strike are highly disfavored." *Id.* To succeed on a motion to strike, the moving party must show that the allegations in the complaint "have no possible relation to the controversy and may cause prejudice to one of the parties, or [that] the allegations confuse the issues." *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2009).

### b. Analysis

JLRNA brings the motion to strike. D.E. 3. In its brief, JLRNA argues that the Complaint should be struck from the record because Plaintiffs violated Federal Rule of Civil Procedure 8(a)(2), which states that a claim for relief must contain a "short and plain statement of the claim." JLRNA Br. at 5. JLRNA takes issue with the length of the Complaint (43 pages), the number of claims asserted, and the "graphic commentary" employed by Plaintiffs' counsel. *Id.* at 5-6.

The Court agrees that the Complaint could have been streamlined. However, "motions to strike are highly disfavored," *Eisai*, 629 F. Supp. 2d at 424, and to succeed on a motion to strike, the moving party must show that the allegations in the complaint "have no possible relation to the controversy and may cause prejudice to one of the parties, or [that] the allegations confuse the issues," *Garlanger*, 223 F. Supp. 2d at 609. While the Court tends to agree that parts of Plaintiffs' Complaint are somewhat redundant, JLRNA has not shown that the allegations "have no possible relation to the controversy," may cause unfair prejudice, or confuse the issues. *Id.* Therefore, the Court denies JLRNA's motion to strike.

## III. MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### a. Legal Standard

Federal Rule of Civil Procedure 12(b)(2) permits a motion to be dismissed for lack of personal jurisdiction. In such a motion, the plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Initially, a court "take[s] the allegations of the complaint as true." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). However, once a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Id.*; *see also Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Yet, in reviewing the evidence, a court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992); *see also Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) ("[I]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed factors in favor of the plaintiff") (internal quotation marks omitted); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003) ("[A] court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff [when deciding a motion regarding personal jurisdiction.]"). Therefore, in determining whether personal jurisdiction exists, the Court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff.

"[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state" so long as the jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Marten v. Godwin*, 499

F.3d 290, 296 (3d Cir. 2007) (internal quotation marks omitted). The inquiry thus involves a two-step process, first looking to the state requirements and then to the constitutional requirements. *IMO Indus., Inc. v. Kiekart AG*, 155 F.3d 254, 259 (3d Cir. 1998). New Jersey's long-arm jurisdiction law provides that courts may "exercise jurisdiction over a non-resident defendant to the uttermost limits permitted by the United States Constitution." *Nicastro v. McIntyre Mach. Am., Ltd.*, 201 N.J. 48, 72 (2010) (internal quotation marks omitted), *rev'd on other grounds sub nom., J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). Accordingly, the two steps are collapsed into one and "we ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted). In other words, to establish personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

The "constitutional touchstone remains whether the defendant purposefully established 'minimum' contacts in the forum State." *Id.* at 474 (citing *Int'l Shoe Co.*, 326 U.S. at 316). A defendant must have "fair warning" that its conduct will subject it to the jurisdiction of a foreign court. *Id.* at 472. A defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Once a plaintiff demonstrates a *prima facie* case of personal jurisdiction by establishing minimum contacts, the burden shifts to the defendant. In fact, once minimum contacts have been shown, jurisdiction is "presumptively constitutional."

*O'Connor*, 496 F.3d at 324. A defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Personal jurisdiction may be established by means of general jurisdiction or specific jurisdiction over a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). If a defendant is subject to a forum's general jurisdiction, the defendant can be sued there on any matter. *Id.* If, however, a defendant is solely subject to specific jurisdiction, the defendant may only face suit in the forum if its activities concerning the forum are related to the claims in the suit. *Id.*

General jurisdiction, also called all-purpose jurisdiction, may be asserted over an out-of-state corporation "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* For an entity, its "place of incorporation and principal place of business are paradigm bases for general jurisdiction[.]" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotation marks omitted). For an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Id.* (citation omitted). Once general jurisdiction is established, a court may hear any and all claims against the defendant. *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919.

In contrast, specific jurisdiction requires that the defendant "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. at 472 (internal citations and quotation marks omitted). The minimum contacts analysis depends upon "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). However, actual "[p]hysical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant." *IMO Indus., Inc.*, 155 F.3d at 259. "[A] defendant may in an appropriate

8

case be subject to jurisdiction without entering the forum ... as where manufacturers or distributors 'seek to serve' a given State's market." *J. McIntyre Machinery, Ld. v. Nicastro*, 564 U.S. 873, 882 (2011).

### b. Analysis

JLRL and Tata both bring motions to dismiss for lack of personal jurisdiction. D.E. 4, 8. Plaintiffs claim that all Defendants are subject to this Court's personal jurisdiction because "Defendants have a regular and established place of business in this judicial district, have purposely transacted business involving the alleged products in this judicial district, including the sale to one or more customers in New Jersey, and certain of the acts complained of herein occurred in this judicial district." Compl. ¶ 71. To support this claim, Plaintiffs assert that cars of the same or substantially similar model of Mr. Levy's Jaguar XJRL with the same or substantially similar SCAD feature "were distributed, marketed, and ultimately purchased within" New Jersey and sold throughout the nation "due to the efforts of Defendants, and/or of each Defendant organized or directed by, through and/or in concert with JLRNA's New Jersey headquarters." *Id.* ¶¶ 77-78. Lastly, Plaintiffs claim that "the injuries to the Plaintiffs arose from activities intentionally undertaken by the Defendants within the State of New Jersey and this judicial district, which activities were aimed at residents of the State of New Jersey and this judicial district, and the injuries to the Plaintiffs arose out of and/or relate to those activities." *Id.* ¶ 79.

Plaintiffs additionally allege an alter ego theory of personal jurisdiction and seek to impute the jurisdictional contacts of JLRNA onto JLRL and Tata. *Id.* ¶ 68. JLRNA is subject to general personal jurisdiction in New Jersey because JLRNA's principal place of business is in Mahwah, New Jersey, making JLRNA "at home" in the forum state. *See Daimler*, 571 U.S. at 137. Plaintiffs state that JLRNA is a wholly owned subsidiary of JLRL, which itself is a wholly owned subsidiary

9

of Tata, so Tata is "the ultimate parent and controlling party" of JLRNA. Compl. ¶¶ 50, 54, 56. In light of their corporate relationships, Plaintiffs allege that "each of the Defendants is an agent, principal, or alter ego of one or more of the other Defendants, and acted with the other Defendants' knowledge, consent, and approval." *Id.* ¶ 68.

However, "[i]t is well-established in New Jersey that the forum contacts of a subsidiary corporation will not be imputed to a parent corporation for jurisdictional purposes without a showing of something more than mere ownership." *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 609 (D.N.J. 2004) (citing *State, Dep't of Environ. Prot. v. Ventron Corp.*, 468 A.2d 150, 164 (N.J. 1983)). "In this context, courts in this Circuit will consider 'whether the subsidiary was merely the alter ego or agent of the parent, and whether the independence of the separate corporate entities was disregarded.'" *Id.* (quoting *Lucas v. Gulf & Western Indus., Inc.*, 666 F.2d 800, 806 (3d Cir. 1981)). Here, the Complaint provides no facts to support its alter ego theory. For example, Plaintiffs do not provide any facts alleging joint decision-making, shared corporate structure, or "whether the independence of the separate corporate entities were disregarded." *Id.* Plaintiffs' allegations are merely conclusory. Therefore, the Court denies Plaintiffs' alter ego theory and will assess general jurisdiction and specific jurisdiction as to JLRL and Tata alone.

### i. General Jurisdiction

JLRL and Tata argue that because neither corporation is "at home" in New Jersey, the Court lacks general personal jurisdiction under *Daimler*. JLRL Br. at 4-7; Tata Br. at 2-4. Under *Daimler*, a corporation's "place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler*, 571 U.S. at 137. Since both JLRL and Tata are incorporated outside of the United States and neither has its principal place of business in New Jersey, the Court agrees that neither Defendant is "at home" in New Jersey. Moreover, Plaintiffs

10

fail to establish that this is an "exceptional case" that warrants the exercise of general jurisdiction. *See Daimler*, 571 U.S. at 139 n.19. Accordingly, the Court lacks general personal jurisdiction over JLRL and Tata.

### ii. Specific Jurisdiction

The minimum contacts analysis for specific jurisdiction depends upon "the relationship among the defendant, the forum, and the litigation." *Shaffer*, 433 U.S. at 204. There must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919. Therefore, the Court must assess the relationship between JLRL and Tata, New Jersey, and Mr. Levy's claims.

Plaintiffs allege that JLRL and Tata, as parent companies of JLRNA, intentionally maintained business contacts with New Jersey through JLRNA's New Jersey headquarters and that both companies have "purposely directed activities at residents" of New Jersey. *Burger King Corp.*, 471 U.S. at 472 (internal citations and quotation marks omitted). Plaintiffs rely on two exhibits (Exhibits 3 and 4) in their opposition to prove that "it is indisputable that Plaintiffs established Defendants' sufficient contact with New Jersey to support specific jurisdiction." Pl. Opp. to JLRL at 7.

Exhibit 3, which appears to be an undated webpage titled "Cundall," indicates that Jaguar Land Rover's Castle Bromwich plant in the United Kingdom is "the sole Jaguar plant." Pl. Opp. to JLRL Ex. 3. The webpage states "this new facility will provide ... assembly facilities for both the Jaguar XJ and XF models." *Id.* Plaintiffs do not explain how this exhibit directly connects JLRL or Tata to New Jersey. Exhibit 4 is an article from Land Rover USA's website titled "Jaguar Land Rover Expands New Jersey Presence with Move of North American Headquarters to New

11

Larger Homebase in Mahwah, N.J." Pl. Opp. to JLRL Ex. 4. While Exhibit 4 ties the Jaguar brand at large to New Jersey, Plaintiffs have not sufficiently alleged that this litigation "results from alleged injuries that arise out of or relate to" activities JLRL and Tata purposely directed at residents of New Jersey. *Burger King Corp.*, 471 U.S. at 472 (internal citations and quotation marks omitted). Plaintiffs' claims arise under tort and contract law. However, as Defendants state, "Mr. Levy bought the subject vehicle in Florida, was injured in Florida, was treated in Florida, and lives in Florida." JLRL Br. at 7; Tata Br. at 4. Plaintiffs must prove a relationship between JLRL and Tata, Plaintiffs' claims, and *New Jersey* – not Florida.

Plaintiffs allege that JLRL is responsible for the "design, development, manufacture, assembly, distribution, and sale of Jaguar vehicles, including [Mr. Levy's] vehicle." Compl. ¶ 51. However, that fact alone does not tie Plaintiffs' claims to New Jersey. Plaintiffs make no allegations as to any particular actions of Tata in or directed toward New Jersey vis-à-vis the litigation. Plaintiffs do not allege that Mr. Levy's vehicle or SCAD part had a connection with New Jersey, much less that JLRL and Tata had a connection with the vehicle and New Jersey. Plaintiffs also do not allege that Plaintiffs' contract with Jaguar was either initiated or breached in New Jersey.

Plaintiffs instead rely heavily on the fact that JLRNA, through its New Jersey headquarters, markets and distributes the same or similar cars to Mr. Levy's car throughout the United States. *Id.* ¶ 66. However, this evidence pertains to JLRNA, not to JLRL or Tata. Since the Court denied Plaintiffs' alter ego theory, the Court will not impute JLRNA's jurisdictional contacts with New Jersey to JLRL and Tata. Plaintiffs' Complaint and supporting exhibits fail to allege a sufficient relationship between Plaintiffs' underlying claims and JLRL and Tata's alleged activities in New Jersey to satisfy the requirements of specific jurisdiction.

12

Plaintiffs also argue in opposition to Defendants' motions that the stream of commerce theory applies. Pl. Opp. to JLRL at 7.[3] Stream of commerce "refers to the movement of goods from manufacturers through distributors to consumers[.]" *J. McIntyre Machinery, Ld.*, 564 U.S. at 881. Personal jurisdiction based on stream of commerce is an issue of specific, not general, jurisdiction. Therefore, a stream of commerce analysis requires that Plaintiffs adequately tie Defendants' actions to the forum state and to the underlying claims. Here, Plaintiffs have not, for example, shown that either JLRL or Tata exported Plaintiffs' vehicle to New Jersey for distribution to Florida, where it was purchased by Mr. Levy. Since Plaintiffs have failed to adequately tie JLRL and Tata's actions in or toward New Jersey to the underlying claims, the stream of commerce theory does not provide Plaintiffs relief. Accordingly, the Court lacks specific personal jurisdiction over both JLRL and Tata.

### iii. Jurisdictional Discovery

Plaintiffs alternately request jurisdictional discovery. Pl. Opp. to JLRL at 4 ("Defendant knows that discovery is the core of any responses based on facts, which Defendant asks this Court to now dispense with."). As explained by the Third Circuit, "[a]lthough the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff

---

[3] In support of their claim, Plaintiffs include quoted language from the Superior Court of New Jersey, Appellate Division's decision in *Nicastro v. McIntyre Mach. Am., Ltd*, 399 N.J. Super. 539, 554, 945 A.2d 92, 101 (App. Div. 2008), *aff'd and remanded*, 201 N.J. 48, 987 A.2d 575 (2010), *rev'd sub nom. J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011). The Court notes several issues with Plaintiffs' quoted language about stream of commerce: (1) Plaintiffs plainly misrepresent that this language comes from the New Jersey Supreme Court ("The New Jersey Supreme Court explained it as follows"), when it was in fact copied from a New Jersey Superior Court opinion, (2) Plaintiffs do not include a case citation, and (3) while the quoted Superior Court opinion was affirmed by the New Jersey Supreme Court, the New Jersey Supreme Court's opinion was later overruled by the U.S. Supreme Court, making Plaintiffs' representation of the law, at best, inaccurate.

by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (internal citation omitted) (quoting *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir.1997). In other words, "[i]f a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* (internal citation omitted) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

Here, Plaintiffs provide only conclusory allegations as to the alter ego theory and fail to present sufficient factual allegations "that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state[.]" *Id.* As a result, the Court declines to order jurisdictional discovery at this time.

In sum, JLRL and Tata's motions to dismiss for lack of personal jurisdiction are granted. However, the Court will grant Plaintiffs leave to amend.

## IV. MOTION FOR SANCTIONS

### a. Legal Standards – Motion for Sanctions

Plaintiffs move for sanctions, counsel fees, costs, and disbursements against Tata pursuant to 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11. Pl. Br. at 9. Section 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

"Section 1927 'requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *Ferguson v. Valero Energy Corp.*, 454 F. App'x 109, 112 (3d Cir. 2011) (quotation omitted). "The principal purpose of sanctions under § 1927 is the deterrence of intentional and unnecessary delay in the proceedings." *Id.* (internal quotation and bracket omitted). "[S]anctions may not be imposed under this statute against attorneys for vexatious and unreasonable multiplication of proceedings absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 142 (3d Cir. 2009). "Indications of this bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002) (quotation omitted). The attorney's actions "must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." *Grider*, 580 F.3d at 142. The Third Circuit has cautioned that "[t]he power to sanction under § 1927 necessarily carries with it the potential for abuse, and therefore the statute should be construed narrowly and with great caution so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *LaSalle Nat. Bank v. First Connecticut Holding Grp., LLC.*, 287 F.3d 279, 289 (3d Cir. 2002) (quotation omitted).

With the exception of discovery, Federal Rule of Civil Procedure 11 applies to "[e]very pleading, written motion, and other paper" filed with a court. Fed. R. Civ. P. 11(a). The rule imposes on any party who presents "a pleading, motion, or other paper . . . an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that the applicable

standard is one of reasonableness under the circumstances." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991); *see also* Fed. R. Civ. P. 11(b). "[R]easonableness [under the circumstances is] defined as an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (citations and internal quotations omitted). Attorneys are required to conduct a "normally competent level of legal research to support the[ir] presentation." *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994).

If Rule 11 is violated, then Rule 11(c)(4) permits the Court to impose sanctions, including reasonable attorneys' fees, expenses, or nonmonetary directives. However, any sanction "must be limited to what suffices to deter repetition of the [sanctionable] conduct[.]" Fed. R. Civ. P. 11(c)(4). "Generally, sanctions are prescribed only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." *Ford Motor Co.*, 930 F.2d at 289 (internal citations and quotations omitted). Additionally, "the imposition of sanctions for a Rule 11 violation is discretionary rather than mandatory." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 146 n.28 (3d Cir. 2009) (citation omitted). In deciding a Rule 11 motion, "[a]ny doubt . . . should be resolved in favor of the party charged with the violation." *Sanders v. Hale Fire Pump Co.*, No. 87-2468, 1988 WL 58966, at *1 (E.D. Pa. June 1, 1988) (citing *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 544 (3d Cir. 1985)).

A court also has the inherent authority to order sanctions where appropriate. "A court may resort to its inherent power to impose sanctions even if much of the misconduct at issue is also sanctionable under statute or rules of court." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 189 (3d Cir. 2002) (citation omitted). "However, because of their very potency, inherent powers must be exercised with restraint and caution." *Id.* (brackets and

citation omitted). "Although a court retains the inherent right to sanction when rules of court or statutes also provide a vehicle for sanctioning misconduct, resort to these inherent powers is not preferred when other remedies are available." *Id.* "Therefore, generally, a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists." *Id.* (brackets and citation omitted).

### b. Analysis

Plaintiffs move for sanctions, counsel fees, costs, and disbursements against Tata pursuant to 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11 "as a result of Defendants' bad faith and frivolous filings." Pl. Br. at 4. Plaintiffs claim that "it appears readily obvious that Defendants filed the instant frivolous motion to dismiss [Tata's motion] – after filing two (2) other motions to dismiss, the second one identical to this motion – to harass and unreasonably prolong these proceedings." *Id.* Plaintiffs take issue with the fact that while Defendants are all represented by the same attorney, each Defendant filed a motion independently. *Id.*

Plaintiffs filed the cross-motion against Tata in particular, alleging that "[t]here is simply no basis in fact or law for [Tata] to file this motion for any reason other than to harass, delay these proceedings and have the Plaintiffs expend additional attorney time, money, and resources." *Id.* In opposition, Tata explains that it filed a second, separate motion to dismiss for lack of personal jurisdiction because the filing deadline for JLRL's motion or answer had expired before Tata was served. Tata Opp. at 2. In response to Plaintiffs' contention that Tata could have joined JLRL's motion, Tata explains that "[t]he jurisdictional facts are not identical," and "[d]ifferent facts are properly and most easily dealt with in separate motions." *Id.* at 4. Plaintiffs reply that it was "not necessary to bombard the Court and the Plaintiffs with motion after motion, particularly at so early

a stage in the litigation" and that "defense counsel is looking to get several bites at the same apple." Pl. Reply at 5.

The Court (strongly) disagrees with Plaintiffs. Tata's motion to dismiss for lack of personal jurisdiction was filed properly in response to a Complaint that raised legitimate issues about personal jurisdiction. Plaintiffs' argument that all Defendants should have filed one motion because they share counsel is meritless. Plaintiffs treat Tata as a separate Defendant, and Tata is entitled to respond accordingly.

Further, Plaintiffs bring this motion pursuant to Rule 11, but have not demonstrated that they have followed Rule 11(c)(2), which provides:

> Motion for Sanctions. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). *The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.* If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2) (emphasis added). Since Plaintiffs have not demonstrated that they abided by the rule's 21-day safe harbor – a threshold requirement to bringing a motion for sanctions – Plaintiffs' cross-motion fails.

Moreover, under both Section 1927 and Rule 11, sanctions are to be imposed only in exceptional situations, like "where a claim or motion is patently unmeritorious or frivolous." *Ford Motor Co.*, 930 F.2d at 289 (internal citations and quotations omitted). The filing of Tata's motion to dismiss does not constitute an exceptional situation of this nature. Further, Plaintiffs do not come close to meeting their burden under Section 1927 to prove that Tata's motion was filed in

bad faith or by intentional misconduct. *See Ferguson*, 454 F. App'x at 112. Plaintiffs' cross-motion for sanctions, counsel fees, costs, and disbursements against Tata is denied.

## V. CONCLUSION

In sum, JLRNA's motion to strike, D.E. 3, is denied; JLRL and Tata's motions to dismiss for lack of personal jurisdiction, D.E. 4, 8, are granted; and Plaintiffs' cross-motion for sanctions, counsel fees, costs, and disbursements against Tata, D.E. 9, is denied. Plaintiffs' request for jurisdictional discovery, D.E. 7, 9, is denied. Dismissal of Plaintiffs' Complaint is without prejudice so as to allow Plaintiff an opportunity to amend. An appropriate Order accompanies this Opinion.

Dated: February 4, 2020

John Michael Vazquez, U.S.D.J.